UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

FELIX LUIS CUEVAS-RODRIGUEZ,

      Petitioner,

v.                              Case No. 3:20-cv-904-MMH-LLL

SECRETARY, FLORIDA
DEPARTMENT OF CORRECTIONS,
et al.,

      Respondents.

_____

## ORDER

### I. Status

Petitioner Felix Luis Cuevas-Rodriguez, an inmate of the Florida penal system, initiated this action on July 29, 2020,[1] by filing a Petition for Writ of Habeas Corpus under 28 U.S.C. § 2254 (Petition; Doc. 1).[2] In the Petition, Cuevas-Rodriguez challenges a 2015 state court (Duval County, Florida) judgment of conviction for vehicular homicide, reckless driving causing serious injury, and criminal use of personal identification. He raises four grounds for relief. See Petition at 5-10. Respondents submitted an Answer to Petition for Writ of Habeas Corpus (Response; Doc. 26). They also submitted an Appendix

---

[1] See Houston v. Lack, 487 U.S. 266, 276 (1988) (mailbox rule).

[2] For purposes of reference to pleadings, the Court will cite the document page numbers assigned by the Court's electronic docketing system.

with Exhibits A-AAA.[3] <u>See</u> Doc. 28. Cuevas-Rodriguez filed a brief in reply (Reply; Doc. 30). This action is ripe for review.

## II. Relevant Procedural History

On September 30, 2014, the State of Florida charged Cuevas-Rodriguez by information in Case No. 2014-CF-8280 with vehicular homicide, reckless driving causing serious bodily injury, and two counts of driving without a driver's license causing death or serious bodily injury. Ex. A at 17-18. The State of Florida later filed an amended information to correct the date of the offenses. <u>Id.</u> at 240-41. Previously, in Case No. 2013-CF-5271, the State had charged Cuevas-Rodriguez by information with one count of criminal use of a personal identification. Ex. B at 15. The trial court granted a motion by the State to consolidate the cases. Ex. A at 250-52. On May 7, 2015, Cuevas-Rodriguez entered an open plea of no contest in both cases reserving the right to appeal the denial of a dispositive motion to dismiss which was premised upon the State's failure to bring him to trial within 180 days under the Interstate Agreement on Detainers Act (IADA). Ex. A at 488-521; Ex. B at 348-49. The trial court sentenced Cuevas-Rodriguez to five years in prison in Case No.

---

[3] The Court refers to the exhibits contained in the Appendix with Exhibits (Doc. 28) as "Ex." and references the page number in the bottom center of the page, as do Respondents. <u>See generally</u> Response.

2013-CF-5171, and for Case No. 2014-CF-8280, the court sentenced him to fifteen years in prison on count one and five years in prison on counts two through four, all counts to run concurrently. Ex. A at 359-65, 517-21; Ex. B at 350-55.

The First District Court of Appeal (First DCA) consolidated the appeals for purposes of briefing. Ex. C. Cuevas-Rodriguez, with the benefit of counsel, filed a Second Amended Initial Brief, arguing the trial court erred when it denied Cuevas-Rodriguez's amended motion to dismiss for the State's failure to comply with the speedy trial provisions of the IADA. Ex. D. The State filed an Answer Brief. Ex. E. Cuevas-Rodriguez filed a reply brief. Ex. F. On May 13, 2016, the First DCA per curiam affirmed Cuevas-Rodriguez's convictions and sentences citing Gee v. State, 954 So. 2d 83 (Fla. 1st DCA 2007). Ex. G. The First DCA issued the mandate on June 8, 2016. Ex. H.

During the pendency of the direct appeal, on September 15, 2015, Cuevas-Rodriguez filed a pro se motion for postconviction relief pursuant to Florida Rule of Criminal Procedure 3.850. Ex. I. [4] On June 15, 2016, he filed an amended Rule 3.850 motion. Ex. O. And, on July 6, 2016, he filed a second

---

[4] In reciting the procedural history, the Court identifies the date of Cuevas-Rodriguez's filings giving him the benefit of the mailbox rule.

amended Rule 3.850 motion. Ex. P. He also moved to incorporate additional grounds and facts. Ex. Q. On October 17, 2016, Cuevas-Rodriguez filed a fourth amended Rule 3.850 motion. Ex. R at 1-11. The trial court entered an order referring to the fourth amended motion as the current motion and striking grounds three and six as legally insufficient with leave to amend. Id. at 12-17. On December 28, 2016, Cuevas-Rodriguez moved to voluntarily dismiss grounds three and six. Id. at 21-23. Thereafter, on February 15, 2017, he filed a motion amending those grounds and asked the court to strike his earlier motion to dismiss those grounds. Id. at 24-29. On April 3, 2017, Cuevas-Rodriguez filed an addendum, id. at 55-61, and on April 4, 2017, he filed another, id. at 33-54.

On May 17, 2017, the trial court entered an order dismissing all of the previously filed postconviction motions and granting Cuevas-Rodriguez leave to amend to consolidate all of his claims into one motion. Id. at 62-67. In its order, the court set forth the applicable law regarding postconviction claims following a guilty plea, citing both Strickland v. Washington, 466 U.S. 668 (1984) and Hill v. Lockhart, 474 U.S. 52 (1985). Ex. R at 64-65. On June 16, 2017, Cuevas-Rodriguez filed an amended motion for postconviction relief, id. at 68-84, and also filed an addendum adding an additional claim of ineffective

4

assistance of counsel, Ex. S. The court ordered the State to respond to the amended motion and addendum, Ex. T, and the State complied. Ex. R at 85-101. Cuevas-Rodriguez next moved to amend/correct his postconviction claims. Id. at 102-105. He also filed a motion to supplement with an exhibit to ground five, id. at 125-37, and filed a reply to the State's response, id. at 138-54. On December 6, 2017, the postconviction court entered an order permitting the addition of ground nine and directing the State to respond to ground nine. Id at 155-57. On November 20, 2017, Cuevas-Rodriguez filed a "Second Amended Motion for Post-Conviction Relief Adding Ground 9." Id. at 158-71. The State filed a response conceding that Cuevas-Rodriguez was entitled to relief on ground nine, a double jeopardy claim. Id. at 175-215. Cuevas-Rodriguez filed a reply and an amended reply. Id. at 237-51.

On July 5, 2018, the court entered an order granting an evidentiary hearing on ground five(b) (whether the State had access to the identity of and contact information for a witness that Cuevas-Rodriguez claims is referenced in a medical examiner's report from March 12, 2013) and ground nine (whether defense counsel rendered ineffective assistance of counsel by advising Cuevas-Rodriguez to plead no contest to counts three and four in Case No. 2014-CF-8280). Id. at 252-57. The court appointed counsel to represent Cuevas-

5

Rodriguez. Id. at 260, 261-62, 266-67. The trial court conducted evidentiary proceedings on November 21, 2018 and December 14, 2018. Ex. R at 685-762, 763-81. Thereafter, on December 26, 2018, the court entered its order denying relief on grounds one, two, three, four, five, six, seven, eight, and the Addendum claim, granting relief on the double jeopardy claim raised in ground nine, and vacating the convictions and sentences for counts three and four in Case No. 2014-CF-8280. Id. at 268-92. The court directed the clerk of the court to amend the judgment and sentence to remove the convictions and sentences for counts three and four (the two counts of driving without a license causing death or serious bodily injury). Id. at 291. The court attached portions of the record to its order. Id. at 293-621.

Cuevas-Rodriguez filed a notice of appeal. Id. at 622-25. Through counsel he filed an initial brief raising two claims: (1) trial counsel provided ineffective assistance of counsel when she failed to adequately investigate the facts surrounding Cuevas-Rodriguez's case, and (2) the trial court committed reversible error in denying his claims of ineffective assistance of counsel without conducting an evidentiary hearing. Ex. U. The State filed an answer brief. Ex. V. On April 23, 2020, the First DCA affirmed per curiam the trial

court's decision without a written opinion. Ex. W. <u>Rodriguez v. State</u>, 294 So. 3d 275 (Fla. 1st DCA 2020). The mandate issued on May 21, 2020. Ex. X.

### III. One-Year Limitations Period

Respondents calculate the Petition was timely filed. Response at 13-15. This action was timely filed within the one-year limitations period. <u>See</u> 28 U.S.C. § 2244(d).

### IV. Evidentiary Hearing

In a habeas corpus proceeding, the burden is on the petitioner to establish the need for a federal evidentiary hearing. <u>See</u> <u>Chavez v. Sec'y, Fla. Dep't of Corr.</u>, 647 F.3d 1057, 1060 (11th Cir. 2011). "In deciding whether to grant an evidentiary hearing, a federal court must consider whether such a hearing could enable an applicant to prove the petition's factual allegations, which, if true, would entitle the applicant to federal habeas relief." <u>Schriro v. Landrigan</u>, 550 U.S. 465, 474 (2007); <u>Jones v. Sec'y, Fla. Dep't of Corr.</u>, 834 F.3d 1299, 1318-19 (11th Cir. 2016). "It follows that if the record refutes the applicant's factual allegations or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing." <u>Schriro</u>, 550 U.S. at 474. The pertinent facts of this case are fully developed in the record before the Court. Because the Court can "adequately assess [Cuevas-Rodriguez's] claim[s]

without further factual development," Turner v. Crosby, 339 F.3d 1247, 1275 (11th Cir. 2003), an evidentiary hearing will not be conducted.

## V. Governing Legal Principles

### A. Standard of Review

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) governs a state prisoner's federal petition for habeas corpus. See Ledford v. Warden, Ga. Diagnostic & Classification Prison, 818 F.3d 600, 642 (11th Cir. 2016). "'The purpose of AEDPA is to ensure that federal habeas relief functions as a guard against extreme malfunctions in the state criminal justice systems, and not as a means of error correction.'" Id. (quoting Greene v. Fisher, 565 U.S. 34, 38 (2011) (quotation marks omitted)). As such, federal habeas review of final state court decisions is "'greatly circumscribed' and 'highly deferential.'" Id. (quoting Hill v. Humphrey, 662 F.3d 1335, 1343 (11th Cir. 2011) (quotation marks omitted)).

The first task of the federal habeas court is to identify the last state court decision, if any, that adjudicated the claim on the merits. See Marshall v. Sec'y, Fla. Dep't of Corr., 828 F.3d 1277, 1285 (11th Cir. 2016). The state court need not issue a written opinion explaining its rationale in order for the state court's decision to qualify as an adjudication on the merits. See Harrington v. Richter,

562 U.S. 86, 100 (2011). Where the state court's adjudication on the merits is unaccompanied by an explanation, the United States Supreme Court has instructed:

> [T]he federal court should "look through" the unexplained decision to the last related state-court decision that does provide a relevant rationale. It should then presume that the unexplained decision adopted the same reasoning.

Wilson v. Sellers, 138 S. Ct. 1188, 1192 (2018). The presumption may be rebutted by showing that the higher state court's adjudication most likely relied on different grounds than the lower state court's reasoned decision, such as persuasive alternative grounds that were briefed or argued to the higher court or obvious in the record it reviewed. Id. at 1192, 1196.

If the claim was "adjudicated on the merits" in state court, § 2254(d) bars relitigation of the claim unless the state court's decision (1) "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States;" or (2) "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d); Richter, 562 U.S. at 97-98. The Eleventh Circuit describes the limited scope of federal review pursuant to § 2254 as follows:

First, § 2254(d)(1) provides for federal review for claims of state courts' erroneous legal conclusions. As explained by the Supreme Court in Williams v. Taylor, 529 U.S. 362, 120 S. Ct. 1495, 146 L.Ed.2d 389 (2000), § 2254(d)(1) consists of two distinct clauses: a "contrary to" clause and an "unreasonable application" clause. The "contrary to" clause allows for relief only "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." Id. at 413, 120 S. Ct. at 1523 (plurality opinion). The "unreasonable application" clause allows for relief only "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." Id.

Second, § 2254(d)(2) provides for federal review for claims of state courts' erroneous factual determinations. Section 2254(d)(2) allows federal courts to grant relief only if the state court's denial of the petitioner's claim "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). The Supreme Court has not yet defined § 2254(d)(2)'s "precise relationship" to § 2254(e)(1), which imposes a burden on the petitioner to rebut the state court's factual findings "by clear and convincing evidence." See Burt v. Titlow, 571 U.S. ---, ---, 134 S. Ct. 10, 15, 187 L.Ed.2d 348 (2013); accord Brumfield v. Cain, 576 U.S. ---, ---, 135 S. Ct. 2269, 2282, 192 L.Ed.2d 356 (2015). Whatever that "precise relationship" may be, "'a state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance.'" Titlow, 571 U.S. at --

10

-, 134 S. Ct. at 15 (quoting <u>Wood v. Allen</u>, 558 U.S. 290,
301, 130 S. Ct. 841, 849, 175 L.Ed.2d 738 (2010)).

<u>Tharpe v. Warden</u>, 834 F.3d 1323, 1337 (11th Cir. 2016). Also, deferential

review under § 2254(d) generally is limited to the record that was before the

state court that adjudicated the claim on the merits. <u>See</u> <u>Cullen v. Pinholster</u>,

563 U.S. 170, 182 (2011) (stating the language in § 2254(d)(1) "requires an

examination of the state-court decision at the time it was made").

Thus, "AEDPA erects a formidable barrier to federal habeas relief for

prisoners whose claims have been adjudicated in state court." <u>Burt v. Titlow</u>,

134 S. Ct. 10, 16 (2013). "Federal courts may grant habeas relief only when a

state court blundered in a manner so 'well understood and comprehended in

existing law' and 'was so lacking in justification' that 'there is no possibility

fairminded jurists could disagree.'" <u>Tharpe</u>, 834 F.3d at 1338 (quoting <u>Richter</u>,

562 U.S. at 102-03). This standard is "meant to be" a "difficult" one to meet.

<u>Richter</u>, 562 U.S. at 102. Thus, to the extent that the petitioner's claims were

adjudicated on the merits in the state courts, they must be evaluated under 28

U.S.C. § 2254(d).

## B. Exhaustion/Procedural Default

There are prerequisites to federal habeas review. Before bringing a §

2254 habeas action in federal court, a petitioner must exhaust all state court

remedies that are available for challenging his state conviction. See 28 U.S.C. § 2254(b)(1)(A). To exhaust state remedies, the petitioner must "fairly present[]" every issue raised in his federal petition to the state's highest court, either on direct appeal or on collateral review. Castille v. Peoples, 489 U.S. 346, 351 (1989) (emphasis omitted). Thus, to properly exhaust a claim, "state prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." O'Sullivan v. Boerckel, 526 U.S. 838, 845 (1999).

In addressing exhaustion, the United States Supreme Court explained:

> Before seeking a federal writ of habeas corpus, a state prisoner must exhaust available state remedies, 28 U.S.C. § 2254(b)(1), thereby giving the State the ""opportunity to pass upon and correct" alleged violations of its prisoners' federal rights."' Duncan v. Henry, 513 U.S. 364, 365, 115 S. Ct. 887, 130 L.Ed.2d 865 (1995) (per curiam) (quoting Picard v. Connor, 404 U.S. 270, 275, 92 S. Ct. 509, 30 L.Ed.2d 438 (1971)). To provide the State with the necessary "opportunity," the prisoner must "fairly present" his claim in each appropriate state court (including a state supreme court with powers of discretionary review), thereby alerting that court to the federal nature of the claim. Duncan, supra, at 365-366, 115 S. Ct. 887; O'Sullivan v. Boerckel, 526 U.S. 838, 845, 119 S. Ct. 1728, 144 L.Ed.2d 1 (1999).

Baldwin v. Reese, 541 U.S. 27, 29 (2004).

A state prisoner's failure to properly exhaust available state remedies results in a procedural default which raises a potential bar to federal habeas review. The United States Supreme Court has explained the doctrine of procedural default as follows:

> Federal habeas courts reviewing the constitutionality of a state prisoner's conviction and sentence are guided by rules designed to ensure that state-court judgments are accorded the finality and respect necessary to preserve the integrity of legal proceedings within our system of federalism. These rules include the doctrine of procedural default, under which a federal court will not review the merits of claims, including constitutional claims, that a state court declined to hear because the prisoner failed to abide by a state procedural rule. See, e.g., Coleman,[5] supra, at 747–748, 111 S. Ct. 2546; Sykes,[6] supra, at 84–85, 97 S. Ct. 2497. A state court's invocation of a procedural rule to deny a prisoner's claims precludes federal review of the claims if, among other requisites, the state procedural rule is a nonfederal ground adequate to support the judgment and the rule is firmly established and consistently followed. See, e.g., Walker v. Martin, 562 U.S. --, --, 131 S. Ct. 1120, 1127–1128, 179 L.Ed.2d 62 (2011); Beard v. Kindler, 558 U.S. --, --, 130 S. Ct. 612, 617–618, 175 L.Ed.2d 417 (2009). The doctrine barring procedurally defaulted claims from being heard is not without exceptions. A prisoner may obtain federal review of a defaulted claim by showing cause for the default and prejudice from a violation of federal law. See Coleman, 501 U.S., at 750, 111 S. Ct. 2546.

---

[5] Coleman v. Thompson, 501 U.S. 722 (1991).
[6] Wainwright v. Sykes, 433 U.S. 72 (1977).

13

<u>Martinez v. Ryan</u>, 132 S. Ct. 1309, 1316 (2012). Thus, procedural defaults may be excused under certain circumstances. Notwithstanding that a claim has been procedurally defaulted, a federal court may still consider the claim if a state habeas petitioner can show either (1) cause for and actual prejudice from the default; or (2) a fundamental miscarriage of justice. <u>Ward v. Hall</u>, 592 F.3d 1144, 1157 (11th Cir. 2010). In order for a petitioner to establish cause,

> the procedural default "must result from some objective factor external to the defense that prevented [him] from raising the claim and which cannot be fairly attributable to his own conduct." <u>McCoy v. Newsome</u>, 953 F.2d 1252, 1258 (11th Cir. 1992) (quoting <u>Carrier</u>, 477 U.S. at 488, 106 S. Ct. 2639).[7] Under the prejudice prong, [a petitioner] must show that "the errors at trial actually and substantially disadvantaged his defense so that he was denied fundamental fairness." <u>Id</u>. at 1261 (quoting <u>Carrier</u>, 477 U.S. at 494, 106 S. Ct. 2639).

<u>Wright v. Hopper</u>, 169 F.3d 695, 706 (11th Cir. 1999).

In the absence of a showing of cause and prejudice, a petitioner may receive consideration on the merits of a procedurally defaulted claim if the petitioner can establish that a fundamental miscarriage of justice, the

---

[7] <u>Murray v. Carrier</u>, 477 U.S. 478 (1986).

14

continued incarceration of one who is actually innocent, otherwise would result. The Eleventh Circuit has explained:

> [I]f a petitioner cannot show cause and prejudice, there remains yet another avenue for him to receive consideration on the merits of his procedurally defaulted claim. "[I]n an extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent, a federal habeas court may grant the writ even in the absence of a showing of cause for the procedural default." Carrier, 477 U.S. at 496, 106 S. Ct. at 2649. "This exception is exceedingly narrow in scope," however, and requires proof of actual innocence, not just legal innocence. Johnson v. Alabama, 256 F.3d 1156, 1171 (11th Cir. 2001).

Ward, 592 F.3d at 1157. "To meet this standard, a petitioner must 'show that it is more likely than not that no reasonable juror would have convicted him' of the underlying offense." Johnson v. Alabama, 256 F.3d 1156, 1171 (11th Cir. 2001) (quoting Schlup v. Delo, 513 U.S. 298, 327 (1995)). Additionally, "'[t]o be credible,' a claim of actual innocence must be based on reliable evidence not presented at trial." Calderon v. Thompson, 523 U.S. 538, 559 (1998) (quoting Schlup, 513 U.S. at 324). With the rarity of such evidence, in most cases, allegations of actual innocence are ultimately summarily rejected. Schlup, 513 U.S. at 324.

## C. Ineffective Assistance of Trial Counsel

"The Sixth Amendment guarantees criminal defendants the effective assistance of counsel. That right is denied when a defense attorney's performance falls below an objective standard of reasonableness and thereby prejudices the defense." <u>Yarborough v. Gentry</u>, 540 U.S. 1, 5 (2003) (per curiam) (citing <u>Wiggins v. Smith</u>, 539 U.S. 510, 521 (2003), and <u>Strickland</u>, 466 U.S. at 687).

> To establish deficient performance, a person challenging a conviction must show that "counsel's representation fell below an objective standard of reasonableness." [<u>Strickland</u>,] 466 U.S. at 688, 104 S. Ct. 2052. A court considering a claim of ineffective assistance must apply a "strong presumption" that counsel's representation was within the "wide range" of reasonable professional assistance. <u>Id.</u>, at 689, 104 S. Ct. 2052. The challenger's burden is to show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." <u>Id.</u>, at 687, 104 S. Ct. 2052.

> With respect to prejudice, a challenger must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." <u>Id.</u>, at 694, 104 S. Ct. 2052. It is not enough "to show that the errors had some conceivable effect on the outcome of the proceeding." <u>Id.</u>, at 693, 104 S. Ct. 2052. Counsel's errors must be "so serious as to deprive the defendant of a fair trial, a

> trial whose result is reliable." <u>Id.</u>, at 687, 104 S. Ct.
> 2052.

<u>Richter</u>, 562 U.S. at 104. The Eleventh Circuit has recognized "the absence of any iron-clad rule requiring a court to tackle one prong of the <u>Strickland</u> test before the other." <u>Ward</u>, 592 F.3d at 1163. Since both prongs of the two-part <u>Strickland</u> test must be satisfied to show a Sixth Amendment violation, "a court need not address the performance prong if the petitioner cannot meet the prejudice prong, and vice-versa." <u>Id.</u> (citing <u>Holladay v. Haley</u>, 209 F.3d 1243, 1248 (11th Cir. 2000)). As stated in <u>Strickland</u>: "If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed." <u>Strickland</u>, 466 U.S. at 697.

A state court's adjudication of an ineffectiveness claim is accorded great deference.

> "[T]he standard for judging counsel's representation is a most deferential one." <u>Richter</u>, 562 U.S. at ---, 131 S. Ct. at 788. But "[e]stablishing that a state court's application of <u>Strickland</u> was unreasonable under § 2254(d) is all the more difficult. The standards created by <u>Strickland</u> and § 2254(d) are both highly deferential, and when the two apply in tandem, review is doubly so." <u>Id.</u> (citations and quotation marks omitted). "The question is not whether a federal court believes the state court's determination under the <u>Strickland</u> standard was incorrect but whether that

> determination was unreasonable — a substantially
> higher threshold." <u>Knowles v. Mirzayance</u>, 556 U.S.
> 111, 123, 129 S. Ct. 1411, 1420, 173 L.Ed.2d 251 (2009)
> (quotation marks omitted). If there is "any reasonable
> argument that counsel satisfied <u>Strickland</u>'s
> deferential standard," then a federal court may not
> disturb a state-court decision denying the claim.
> <u>Richter</u>, 562 U.S. at ---, 131 S. Ct. at 788.

<u>Hittson v. GDCP Warden</u>, 759 F.3d 1210, 1248 (11th Cir. 2014); <u>Knowles v. Mirzayance</u>, 556 U.S. 111, 123 (2009). In other words, "[i]n addition to the deference to counsel's performance mandated by <u>Strickland</u>, the AEDPA adds another layer of deference — this one to a state court's decision — when we are considering whether to grant federal habeas relief from a state court's decision." <u>Rutherford v. Crosby</u>, 385 F.3d 1300, 1309 (11th Cir. 2004). As such, "[s]urmounting <u>Strickland</u>'s high bar is never an easy task." <u>Padilla v. Kentucky</u>, 559 U.S. 356, 371 (2010).

With respect to an ineffective assistance challenge to the voluntariness of a guilty or no contest plea, a petitioner must show there is a "reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." <u>Hill</u>, 474 U.S. at 59. The ineffective assistance of counsel may require a plea be set aside on the ground that it was involuntary because voluntariness implicates not only threats and inducements but also ignorance and incomprehension. <u>Finch v. Vaughn</u>, 67

18

F.3d 909, 914 (11th Cir. 1995) (citations omitted). This Court is mindful that in a post-conviction challenge to a guilty or nolo plea, the representations of the defendant, his counsel, and the prosecutor at the plea hearing, plus the findings of the judge, constitute "a formidable barrier." Blackledge v. Allison, 431 U.S. 63, 73-74 (1977). Indeed, a defendant's solemn declarations in open court "carry a strong presumption of verity." Id. at 74. Thus, later contentions by a defendant contrary to the record may be deemed wholly incredible based on the record.

## VI. Findings of Fact and Conclusions of Law

### A. Ground One

As Ground One, Cuevas-Rodriguez alleges he received ineffective assistance of counsel with respect to his double jeopardy claim. Petition at 5. In ground nine of his amended postconviction motion, Cuevas-Rodriguez alleged trial counsel was ineffective for counseling him to enter a plea to counts three and four in Case No. 2014-CF-8280 despite the fact that those charges violated the double jeopardy clause. Ex. R at 158-71. The State conceded that it would be proper for the trial court to vacate the convictions on counts three and four. Id. at 176. Nevertheless, the court granted and held an evidentiary hearing to address his claim in ground nine. Id. at 256.

19

The court found that double jeopardy precluded the convictions for counts three and four, the double jeopardy violation was apparent from the face of the record, and based on the facts, including the state's concession as to double jeopardy, it was "unnecessary to decide whether Counsel performed ineffectively as it relates to the double jeopardy violation." Id. at 290. Appellate counsel did not include a claim of ineffective assistance of counsel for counseling Cuevas-Rodriguez to enter a plea to counts three and four when those charges violated double jeopardy. Ex. U. Appellate counsel also did not argue that the trial court erred by not finding ineffective assistance of counsel for permitting Cuevas-Rodriguez to plead to counts three and four.

Respondents contend that Cuevas-Rodriguez did not properly exhaust this ineffectiveness claim in the state courts, and therefore the claim is procedurally defaulted. Response at 24-27. Cuevas-Rodriguez acknowledges that he did not exhaust this claim in state court but argues that his appellate counsel was ineffective for failing to raise the claim once Cuevas-Rodriguez made her aware of the claim. Petition at 5-6.

The Court finds Cuevas-Rodriguez did not exhaust the claim raised in Ground One. Although he appealed with the assistance of counsel, he did not include this claim in the appellate brief. Thus, the claim was abandoned.

Because any future attempt to exhaust it would be futile, the claim is procedurally defaulted.

To the extent Cuevas-Rodriguez is attempting to argue that the procedural bar should be excused pursuant to <u>Martinez</u>, the holding in <u>Martinez</u> is inapplicable to this situation and does not provide satisfactory cause for the default. <u>Martinez</u>, 566 U.S. at 16 ("It does not extend to attorney errors in any proceeding beyond the first occasion the State allows a prisoner to raise a claim of ineffective assistance at trial[.]"). As <u>Martinez</u> has limited scope it is simply inapplicable to Cuevas-Rodriguez's case. <u>See Capocci v. Stewart</u>, No. 16-0507-WS-M, 2017 WL 373452, at *4 n.5 (S.D. Ala. Jan. 25, 2017) (not reported in F. Supp.) (recognizing that federal courts decline to extend <u>Martinez</u> to procedural default of ineffective assistance of appellate counsel claims as the <u>Martinez</u> decision is narrow). Indeed, <u>Martinez</u> provides a narrow, equitable, non-constitutional exception. As such, Cuevas-Rodriguez's procedural default is not excused.

As Cuevas-Rodriguez is procedurally barred from raising Ground One, he must demonstrate cause and prejudice for the default. In his Reply, Cuevas-Rodriguez contends he lost contact with his appellate counsel "due to the pandemic and transferring to outside court." Reply at 9. He relates that his

21

counsel filed her brief on July 29, 2019, and he was extradited to Connecticut almost four months later, on November 25, 2019. Id. He contends the prison and the courts shut down shortly after his arrival and asserts he was unable to communicate with his counsel or the Court due to Covid restrictions. Id.

The Court is not persuaded by Cuevas-Rodriguez's argument. He acknowledges that he knew of the claim and told his counsel of the claim prior to her filing the appellate brief. And, he was not transferred to another state for almost four months after the filing of the initial appellate brief. Cuevas-Rodriguez has not pointed to any external impediment that prevented him from raising the claim. Ward, 592 F.3d at 1176-77 (finding interference by state officials that impeded the raising of a claim). Indeed, Covid restrictions did not come into play in the United States until approximately March of 2020, at least seven months after his appellate brief was filed. As such, there was no external impediment that prevented Cuevas-Rodriguez from raising this claim.

Cuevas-Rodriguez has failed to establish cause and prejudice or that a fundamental miscarriage of justice will result if the Court fails to address the claim on its merits. Notably, Cuevas-Rodriguez received the relief to which he was entitled: the trial court vacated the two convictions for driving without a

driver's license causing serious injury or death as these offenses were duplicative of the more serious offense charged in count one and the offense charged in count two (vehicular homicide and reckless driving causing serious injury). The trial court imposed concurrent sentences; therefore, there was no change in the length of sentence once the two improper convictions were vacated.

The Court further finds this is not an extraordinary case as Cuevas-Rodriguez has not made a showing of actual innocence rather than mere legal innocence. When Cuevas-Rodriguez considered making an open plea, he faced a maximum of fifteen years in prison for vehicular homicide, a second-degree felony, regardless of the calculation for the other offenses. Ex. A at 366. Without the two charges for driving without a driver's license, the minimum score still would have been at least twelve years. Ex. A at 491. As noted by the State, "[t]he DWLS Charges did not affect . . . the Court's sentence[.]" Ex. R at 176. As such, the Court finds that the claim in Ground One is procedurally defaulted and the fundamental miscarriage of justice exception is inapplicable. Cuevas-Rodriguez's procedural default bars this Court's review of Ground One.

Alternatively Cuevas-Rodriguez's ineffectiveness claim is without merit. The postconviction court found defense counsel Belkis Plata's testimony credible:

> Attorney Plata testified at the evidentiary hearing. Attorney Plata has been practicing law for eight years, has been continuously in good standing with the Florida Bar, and is Board Certified in juvenile law. She began her career as a public defender, where she was employed for nearly four years. Attorney Plata testified that she received the entirety of Defendant's file from his former attorneys. She further testified that she received complete discovery from the State on April 2, 2015, more than a month before Defendant entered his plea in this case. Finally she testified that she received Ms. Meacham's report as part of the State's discovery file. This Court observed Attorney Plata's testimony and found it credible.

Id. at 282.

At the time of her representation of Cuevas-Rodriguez, Ms. Plata was an experienced criminal defense attorney who had formerly been a public defender. "When courts are examining the performance of an experienced trial counsel, the presumption that [her] conduct was reasonable is even stronger." Hardwick v. Benton, 318 F. App'x 844, 846 n.2 (11th Cir. 2009) (per curiam) (quoting Chandler v. United States, 218 F.3d 1305, 1316 (11th Cir. 2000)). Indeed, there is a strong presumption that an experienced trial counsel's performance is not ineffective. And, notably, this Court has "no license to

24

redetermine credibility of witnesses whose demeanor has been observed by the state trial court, but not by" this Court. Consalvo v. Sec'y for Dep't of Corr., 664 F.3d 842, 845 (11th Cir. 2011) (per curiam) (internal quotation marks omitted) (quoting Marshall v. Lonberger, 459 U.S. 422, 434 (1983)).

Ms. Plata testified that she was aware of the double jeopardy issue. Ex. R at 755. She said she discussed the issue with Cuevas-Rodriguez on April 17, 2015. Id. Ms. Plata testified she advised against his entering a plea straight up to the court and rushing to immediate sentencing. Id. at 747. She attested that Cuevas-Rodriguez did not heed her advice. Id. According to Ms. Plata, Cuevas-Rodriguez told her he did not want her to interject during the plea concerning the double jeopardy issue. Id. at 756-57. However, Ms. Plata was "confident that we would be able to get [the charges] dropped when we got to that point, but we weren't there yet." Id. She conceded that she probably should have brought it up during the plea proceeding but it would have been against her client's wishes. Id. at 757-58. When asked whether or not the existence of the two driving on suspended license charges would have made any difference in Cuevas-Rodriguez's decision to plead straight up to the court that day, Ms. Plata responded, "[a]bsolutely not." Id. at 758.

To prevail on a claim of ineffective assistance of counsel, a petitioner must demonstrate both deficient performance and prejudice. The Court is not convinced that Ms. Plata performed deficiently under these circumstances. Regardless, even assuming arguendo deficient performance by counsel, Cuevas-Rodriguez has not shown any resulting prejudice. Indeed, no prejudice resulted from counsel's failure to interject at the plea proceeding or prior to the open plea proceeding. She discussed the double jeopardy issue with Cuevas-Rodriguez, so he was aware of the matter prior to the open plea to the court, and no prejudice resulted. Moreover, Cuevas-Rodriguez has not shown a reasonable probability exists that the outcome of the case would have been different if counsel had objected. Prior to his plea, Cuevas-Rodriguez knew that the sentencing range he was facing was 12 to 15 years in prison, and dismissal of the two driving with a suspended license counts would not meaningfully impact that range. Ex. R at 177, 696-97. With or without those two counts, the margin he had to work with would still have been in the range of 12 to 15 years. Ex. A at 366 (Criminal Punishment Code Scoresheet). Moreover, his convictions on those two counts have been vacated. For all of the foregoing reasons, Cuevas-Rodriguez is not entitled to habeas relief on the claim in Ground One.

## B. Ground Two

As Ground Two, Cuevas-Rodriguez asserts that the state postconviction court erred when it denied his ineffectiveness claim without an evidentiary hearing beyond those matters heard at the evidentiary proceeding. Petition at 7. In doing so, he challenges a defect in the state postconviction process. Respondents argue that Cuevas-Rodriguez's assertions involve "state law and procedure not cognizable on federal habeas corpus review," Response at 30, and this Court agrees.

The Eleventh Circuit "has repeatedly held defects in state collateral proceedings do not provide a basis for habeas relief." Carroll v. Sec'y, Dep't of Corr., 574 F.3d 1354, 1365 (11th Cir. 2009) (citations omitted). "The reasoning behind this well-established principle is straightforward: a challenge to a state collateral proceeding does not undermine the legality of the detention or imprisonment - i.e., the conviction itself – and thus habeas relief is not an appropriate remedy." Id. (citations omitted); Anderson v. Sec'y for Dep't of Corr., 462 F.3d 1319, 1330 (11th Cir. 2006) (per curiam); Quince v. Crosby, 360 F.3d 1259, 1261-62 (11th Cir. 2004); Spradley v. Dugger, 825 F.2d 1566, 1568 (11th Cir. 1987) ("Neither the state court's failure to hold a hearing on petitioner's 3.850 motion nor its failure to attach the relevant portions of the

record in any way undermines the validity of petitioner's conviction. Because [the] claim[] goes to issues unrelated to the cause of petitioner's detention, it does not state a basis for habeas relief") (citations omitted). As such, Cuevas-Rodriguez is not entitled to federal habeas relief on the claim in Ground Two.

### C. Ground Three

In Ground Three, Cuevas-Rodriguez contends that his trial counsel was ineffective when she failed to adequately investigate the facts of his charges. Petition at 8. In support of this claim, he asserts that the State committed a Brady[8] violation when it failed to provide defense counsel the contact information for Ms. Wendy Meacham, the investigator for the medical examiner's office, and trial counsel failed to adequately investigate the matter. (Doc. 1-5 at 3). Specifically, Cuevas-Rodriguez contends Ms. Plata never investigated the discrepancies between Sergeant Bazinet's[9] statements in the affidavits in support of the arrest warrant and his statements to Ms. Meacham.

---

[8] Brady v. Maryland, 373 U.S. 83 (1963) (to successfully sustain a Brady claim, a defendant must show favorable evidence – either exculpatory or impeaching, was willfully or inadvertently suppressed by the state, and the evidence was material, resulting in prejudice to defendant).

[9] At the time of the accident, Sergeant Bazinet was a corporal with the Florida Highway Patrol assigned to the traffic homicide investigations unit. Ex. R at 721, 771-72. By the time of the postconviction evidentiary hearing, he was a Sergeant. Id. at 721.

Id. at 3-4. Cuevas-Rodriguez argues the Brady violation goes hand-in-hand with counsel's failure to properly investigate the charges against him. Id. at 4. As such, he contends he is entitled to relief on the claims he presented in ground five of the amended motion for postconviction relief.

On June 16, 2017, Cuevas-Rodriguez filed his operative amended motion for postconviction relief. Ex. R at 68-84. He raised eight grounds. In the fifth ground he argued, "[d]efense counsel Belkis C. Plata rendered (IAC) by failing to conduct deposition or call in as a witness Trooper David Bazinet the leading investigator of the accident and a Brady violation, and prosecutorial [sic]."[10] Ex. R at 76. In addressing the claim in ground five of the amended motion for postconviction relief, the postconviction court broke the claim into two parts, an ineffective assistance of counsel claim for failure to depose Trooper, now

---

[10] In ground five of the operative state postconviction motion, Cuevas-Rodriguez contended there was a Brady violation because the State Attorney's Office omitted exculpatory evidence, the identity of the "Ford Mustang witness(es)." Ex. R at 77. He asserted that Angela Corey and Frank Gaulden failed to disclose the Ford Mustang witness(es) who could have described how Cuevas-Rodriguez's vehicle was traveling, the existence of the Ford Mustang, the existence of the stopped vehicle on the center lane of the highway, and how both Cuevas-Rodriguez's vehicle and the Ford Mustang swerved to the left and to the right, respectively, to avoid a collision with the stopped vehicle in the center lane of the highway. Id. at 79. Cuevas-Rodriguez contended the state had the witness's name, address, and phone number but intentionally omitted this evidence and did not provide it to the defense. Id. According to Cuevas-Rodriguez, "[h]ad it not been for counsel's errors, the defendant would not have pleaded 'no contest', and would have insisted on going to trial." Id. at 79-80.

Sergeant, Bazinet and a <u>Brady</u> claim that the State withheld contact information for an exculpatory witness. <u>Id.</u> at 278.

Here the Court considers the claim of ineffective assistance of counsel raised in Ground Three of the Petition.[11] Respondents concede that Cuevas-Rodriguez exhausted his state court remedies by raising this ineffective assistance of counsel claim by asserting it in ground five of his amended motion for postconviction relief and at the evidentiary hearings, and by raising it on appeal from the denial of postconviction relief. Response at 31-32.

In his amended state postconviction motion, Cuevas-Rodriguez argued:

> Attorney Plata tendered ineffective assistance after she failed to immediately conduct a deposition on [sic] Trooper David Bazinet who in one report stated that both the Ford Mustang and the stopped/parked vehicle on the center lane of the highway had left the scene of the accident "prior" to the arrival of law enforcement. Then, while giving a statement to the Medical Examiner's Investigator, Trooper David Bazinet indicated that he had made contact with the Ford Mustang who gave a description on the events leading to the accident. This witness stated to Trooper Bazinet that he/she and the Defendant were driving on I-95 (Northbound) and he/she witnessed a stopped vehicle on the middle of the highway, and that he/she swerved to the "left" and Defendant swerved to the "right" to avoid a rear-end collision with the stopped (sideways) vehicle. When counsel learned from the

---

[11] The Court will consider Cuevas-Rodriguez's <u>Brady</u> claim of prosecutorial misconduct in its analysis of Ground Four.

Defendant about this information, she refused to call in Trooper David Bazinet for a deposition. Counsel continued to say that she was focusing on a "no contest" plea to get the Defendant out on a supersedeas bond"[sic]. Counsel refused to suppress any evidence concerning the mysterious Ford Mustang. Had counsel conducted a deposition on David Bazinet, she would have discovered that trooper Bazinet had spoken and collected information from the Ford Mustang witnesses; discovered that the Ford Mustand [sic] witnessed the parked vehicle on the center laner [sic] of the highway; discovered that the Ford Mustang had distracted witness Beaurden moments prior to the accident; and, that the Mustang intentionally and irratically [sic] assisted in causing this accident. Counsel would have also discovered that the Trooper was available for trial; and, the substance of the expected testimony was or would have been that he had spoken to the operator of the Ford Mustang and intentionally omitted this material fact "after" he learned the Defendant was driving on a fraudulent license and had allegedly concealed his true identity to Trooper David Bazinet report dated.

Ex. R at 76-77 (alterations in original).

The postconviction court succinctly summarized the allegation raised in ground five(a) as follows:

Defendant alleges Sergeant Bazinet of the Florida Highway Patrol offered conflicting accounts concerning his interaction with the driver of a Ford Mustang that was also allegedly involved in the traffic incident that led to Defendant's charges. Defendant claims that in his Affidavit for Arrest Warrant, Sergeant Bazinet wrote that the Ford Mustang had left the scene of the accident prior to the arrival of law

> enforcement. Defendant also claims that Sergeant
> Bazinet is quoted in a medical examiner's report as
> having made contact with the Ford Mustang driver
> who provided a description of the traffic incident at
> issue.

Id. at 278.

The postconviction court first considered the record of Cuevas-Rodriguez's plea and found that it belied his contentions that defense counsel failed to properly investigate the charges against him. Id. at 279-80. The court pointed out that at the plea proceeding Cuevas-Rodriguez expressed complete satisfaction with his counsel. Id. at 280. The court quoted the plea record and found it "conclusively establishes that Defendant understood and agreed that, by entering his no contest plea to all of the charges against him, he waived his right to call, confront, and cross-examine witnesses." Id. at 280-81. The court explained, "[n]ecessarily included within the cross-examination of witnesses is the ability to impeach a witness with his prior inconsistent statements (including those made during a deposition)." Id. at 281. The court found Cuevas-Rodriguez "knowingly waived this right during his plea colloquy." Id.

The court further noted that Cuevas-Rodriguez stated that he was "very much" satisfied with counsel's representation, "and that she had not failed to undertake any course of conduct (such as deposing a witness) that would give

32

Defendant pause in entering his plea." Id. Based on the record, the court rejected Cuevas-Rodriguez's attempt to go behind his representations during the plea proceeding finding the claim regarding counsel's failure to depose Sergeant Bazinet to be in direct contravention of Cuevas-Rodriguez's representations during the plea colloquy. Id.

In denying relief on ground five(a), the postconviction court also determined that any failure to depose Sergeant Bazinet resulted in no prejudice. The court explained:

> Moreover, during the evidentiary hearing, Sergeant Bazinet testified that he never located or made contact with the driver of the Ford Mustang. Sergeant Bazinet has over eighteen years of experience with the Florida Highway Patrol and this Court found his testimony credible. Because Defendant's theory of prejudice rests entirely on the information Sergeant Bazinet allegedly obtained from his conversations with the Ford Mustang driver, it is clear that no prejudice could have resulted from attorney Plata not deposing Sergeant Bazinet. Because the record conclusively refutes Ground Five(a) of Defendant's motion, it is denied.

Id. The postconviction court denied relief and the First DCA per curiam affirmed the denial of relief without a written opinion. Ex. W.

To the extent that the First DCA decided the claim on the merits, the Court will address the claim in accordance with the deferential standard for

33

federal court review of state court adjudications. After a review of the record and the applicable law, the Court concludes that the state court's adjudication of this claim was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Thus, Cuevas-Rodriguez is not entitled to relief on the basis of this claim.

Nevertheless, even if the appellate court's adjudication of the claim is not entitled to deference, Cuevas-Rodriguez's ineffectiveness claim is without merit. The postconviction court credited Sergeant Bazinet's testimony given at the evidentiary hearing. Since the state court observed Sergeant Bazinet's testimony and apparently found him more credible, this Court will not make any redetermination of credibility. Consalvo, 664 F.3d at 845. Sergeant Bazinet testified that he never spoke to the driver of the Mustang as the Mustang was not present at the scene. Ex. R at 723. Sergeant Bazinet explained that he gathered information from Trooper Thomason.[12] Id. Sergeant Bazinet testified that he did not tell Ms. Meacham that he spoke with the driver of the Mustang

---

[12] Trooper Thomason related that "[t]he Ford Mustang and the vehicle that was crossing the northbound travel lanes did not remain at the scene and were not successfully identified." Ex. R at 129.

as he never located the driver of the Mustang. Id. at 725-26. According to Sergeant Bazinet, Ms. Meacham simply misunderstood Sergeant Bazinet when they spoke on the phone. Id. at 728. In light of this testimony, Cuevas-Rodriguez has failed to show that counsel was deficient when she failed to depose Sergeant Bazinet. Based on the Florida Highway Patrol report, the driver of the Mustang was never identified and did not provide a witness statement. Sergeant Bazinet confirmed that reported fact when he testified at the evidentiary hearing and the court found his testimony credible. This Court will give deference to that credibility determination.

Even assuming arguendo deficient performance by counsel, Cuevas-Rodriguez has not shown any resulting prejudice. As noted by the postconviction court, because Cuevas-Rodriguez's theory of prejudice rested entirely on the information Sergeant Bazinet allegedly obtained from his conversations with the Ford Mustang driver, no prejudice could have resulted from attorney Plata not deposing Sergeant Bazinet. Cuevas-Rodriguez has not shown a reasonable probability exists that the outcome of the case would have been different if counsel had deposed Sergeant Bazinet. Cuevas-Rodriguez's ineffectiveness claim is without merit because he has shown neither deficient

performance nor resulting prejudice. Accordingly, he is not entitled to federal habeas relief on the claim in Ground Three.

### D. Ground Four

Next, the Court addresses Ground Four of the Petition. There, Cuevas-Rodriguez asserts that the state postconviction court erred when it summarily denied a claim of prosecutorial misconduct by State Attorney Angela B. Corey. Petition at 10. In his support of this claim, Cuevas-Rodriguez states:

> I was extradited to Florida August 28, 2014 and arraigned on Four Counts: 1) Vehicular Homicide (sister), 2) Reckless Driving Causing Serious Injury (Mom), 3) Driving w/o a DL Causing Death or Serious Injury (sister), and 4) Driving w/o a DL Causing Death or Serious Injury (Mom). State Attorney Angela B. Corey knew that Trooper Bazinet had committed perjury and tampered with evidence in order to charge me with a crime I did not commit. I was pro-se and accused the State Attorney of "corruption." Angela Corey did not take it litely [sic]. She threatened me during depositions of getting me the maximum sentences allowed by statute and a for sure conviction. Attorney Plata pressured me to open plea or suffer consequences.

Id. Cuevas-Rodriguez contends he raised the same claim in his motion for postconviction relief, but the state court denied it. Id. Respondents argue that Cuevas-Rodriguez did not properly exhaust a stand-alone claim of prosecutorial misconduct as he did not raise it in his amended motion for

postconviction relief. Response at 62-63. Additionally, Respondents contend that Cuevas-Rodriguez has failed to establish cause and prejudice or point to any facts warranting the application of the fundamental miscarriage of justice exception to the defaulted claim. Id. at 63. As such, Respondents assert the procedural default bars habeas review. Id.   Respondents also argue, to the extent Cuevas-Rodriguez did allege prosecutorial misconduct in ground five of the amended motion for postconviction relief, the claim should be denied. Id. at 58-63.

In his Reply, Cuevas-Rodriguez changes his argument, he contends the State committed a Brady violation when it failed to disclose Wendy Meacham's identity and contact information, not that of the operator of the Ford Mustang. Reply at 19. The Florida Highway Patrol's report narrative states: "[t]he Ford Mustang and the vehicle that was crossing the northbound travel lanes did not remain at the scene and were not successfully identified." Ex. R at 129. However, Ms. Meacham's March 12, 2013 Hospital Death Investigation concerning the death of Merarie Angelica Cuevas contains the following statement:

> I made contact with Cpl. Bazinet who provided the following information: The decedent was one of three occupants in a Ford Edge (small SUV) that was traveling northbound on Interstate 95 when the

vehicle reportedly swerved to miss a vehicle that was stopped in the roadway. The vehicle the decedent was traveling in swerved to the right and went off the roadway, traveling along the tree line before impacting a tree on the passenger side. **A witness who was also traveling northbound advised the responding trooper that the vehicle that was stopped in the roadway was sideways and he (witness) swerved to the left and the decedent's vehicle swerved to the right.** The stopped vehicle left the scene prior to the arrival of law enforcement or rescue.

Id. at 128 (emphasis added). Ultimately, Cuevas-Rodriguez argues that the State Attorney's Office intentionally and criminally omitted exculpatory evidence of the driver of the Ford Mustang in order to justify false charges.

In his earlier postconviction motions, Cuevas-Rodriguez raised some claims of prosecutorial misconduct which he did not pursue in his operative amended motion for postconviction relief: prosecutorial misconduct of Assistant State Attorney Frank Gaulden, Ex. Q at 2; prosecutorial misconduct of Gaulden and Corey, Ex. R at 8; and prosecutorial misconduct of Gaulden, id. at 27. The court dismissed these earlier motions granting Cuevas-Rodriguez leave to amend to consolidate all claims in one motion. Id. at 62-67. Respondents assert that other than the claim of prosecutorial misconduct presented in ground five of the operative amended motion for postconviction relief, Cuevas-Rodriguez's claims of prosecutorial misconduct are unexhausted

38

and procedurally defaulted as they were dismissed and not raised in the amended motion. Response at 62-63.

To the extent Cuevas-Rodriguez is attempting to raise any claims of prosecutorial misconduct that were dismissed by the state court, the claims are unexhausted and procedurally defaulted as he did not include them in his amended motion for postconviction relief as required by the state court's order. He has failed to show cause and prejudice or that a fundamental miscarriage of justice will result if these claims are not addressed on their merits.

As to the sole exhausted claim, the postconviction court denied relief:

> In Ground Five(b), Defendant alleges that the State committed a Brady violation. Specifically, Defendant offers that the State had access to the identity of and contact information for a witness that Defendant claims is referenced in a medical examiner's report from March 12, 2013. Defendant contends that the witness is referred to on page one of a report (Report #13-0420) authored by medical examiner Wendi [sic] Meacham. Defendant believes this witness to be the driver of the Ford Mustang allegedly involved in the traffic incident that resulted in Defendant being charged in this case. Defendant alleges that the witness provided an account of the incident that mirrored Defendant's version of events and that the State had access to the witness's name, address, and phone number, but intentionally hid this information from Defendant in an effort [to] conceal any exculpatory evidence that the witness could provide.

Ex. R at 281-82 (footnote omitted).

The postconviction court applied the appropriate standard for reviewing a claimed <u>Brady</u> violation. <u>Id.</u> The court analyzed Cuevas-Rodriguez's claim that the State failed to disclose the identity of a witness or the investigator's report, which Cuevas-Rodriguez argued constituted exculpatory evidence, and found the claim to be meritless. <u>Id.</u> at 282-83. The court also found attorney Plata's testimony credible (she attested that she received the complete discovery file from the State, and Ms. Meacham's report was part of the State's discovery packet she received).[13] <u>Id.</u> at 282. Given this testimony, the court found that the State did not suppress the report. <u>Id.</u> at 283. The court stated:

> To the extent Defendant claims that the State committed a <u>Brady</u> violation by not furnishing him with a copy of Ms. Meacham's report, this claim fails because Attorney Plata's testimony demonstrates that [the] State did not suppress the report. To the extent Defendant claims that the State violated <u>Brady</u> by not providing him with contact information for the driver of the Ford Mustang, this claim fails because Defendant failed to present any evidence that the State possessed such information. <u>See</u> Fla. R. Crim. P. 3.850(f)(8)(B) ("At an evidentiary hearing, the defendant shall have the burden of presenting evidence and the burden of proof in support of his or

---

[13] The report is from the Office of the Medical Examiner, and it includes an address, phone number, and the name of the investigator, W. Meacham. Ex. R at 128. Thus, the State provided the defense with the identity of the investigator, contact information, and a copy of her report.

> her motion, unless otherwise provided by law."). Indeed, Sergeant Bazinet testified that he never made contact with the driver of the Ford Mustang. Likewise, Ms. Meacham testified that she never had contact with the driver of the Ford Mustang. This Court observed Sergeant Bazinet's and Ms. Meacham's testimony and found them each to be credible. On these facts, it is clear that Defendant failed to carry the evidentiary burden imposed on him under Rule 3.850.

Ex. R at 283.

As noted above, the court determined that the <u>Brady</u> claim failed to the extent Cuevas-Rodriguez argued the State violated <u>Brady</u> by not providing him with contact information for the driver of the Ford Mustang because Cuevas-Rodriguez failed to present any evidence that the State ever possessed such information. <u>Id.</u> Neither Sergeant Bazinet nor Ms. Meacham testified that they had contact with the driver of the Ford Mustang. <u>Id.</u> The postconviction court found their testimony credible, <u>id.</u>, and this Court is not in a position to revisit credibility determinations and extends deference to the state court's credibility determinations. <u>Consalvo</u>, 664 F.3d at 845. The First DCA per curiam affirmed the denial of postconviction relief without a written opinion. Ex. W.

To the extent that the First DCA decided the claim on the merits,[14] the Court will address the claim in accordance with the deferential standard for

---

[14] <u>See</u> <u>Wilson</u>, 138 S. Ct. at 1192.

41

federal court review of state court adjudications. After a review of the record and the applicable law, the Court concludes that the state court's adjudication of this claim was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Thus, Cuevas-Rodriguez is not entitled to relief on the basis of this claim.

Nevertheless, even if the appellate court's adjudication of the claim is not entitled to deference, Cuevas-Rodriguez's claim is without merit. Favorable evidence was not willfully or inadvertently suppressed by the State. The State gave Ms. Meacham's report to the defense as part of discovery. Thus, the State did not suppress the report or Ms. Meacham's identity. Moreover, the State did not suppress the identity of the driver of the Mustang as it was never known to the troopers or investigators. The driver of the Mustang did not stop at the scene, and the driver's identity was not discovered by the State. Notably, the State did provide the notes of Ralph Bearden's statement through the State's Second Supplemental Discovery Exhibit. Ex. A at 199-206. Mr. Bearden's statement reflects that he was a driver who saw the events leading up to the

crash, the crash, and the aftermath of the crash.[15] Id. His name, address, and interview were disclosed. Id. at 28-30. The record demonstrates the State provided the defense with a witness's name, address, interview, and the notes of his statement to the responding trooper.

Cuevas-Rodriguez is not entitled to habeas corpus relief on the claim in Ground Four as the State Attorney's Office did not omit exculpatory evidence of the driver of the Ford Mustang or Ms. Meacham. As such, the claim of prosecutorial misconduct raised in Ground Four is due to be denied.

## VII. Certificate of Appealability
## Pursuant to 28 U.S.C. § 2253(c)(1)

If Cuevas-Rodriguez seeks issuance of a certificate of appealability, the undersigned opines that a certificate of appealability is not warranted. The Court should issue a certificate of appealability only if the petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To make this substantial showing, Cuevas-Rodriguez "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," Tennard v. Dretke, 542 U.S.

---

[15] Mr. Bearden was not the driver of the Mustang or the car that was situated across the roadway. Ex. A at 200-206.

274, 282 (2004) (quoting <u>Slack v. McDaniel</u>, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further,'" <u>Miller-El v. Cockrell</u>, 537 U.S. 322, 335-36 (2003) (quoting <u>Barefoot v. Estelle</u>, 463 U.S. 880, 893 n.4 (1983)).

Where a district court has rejected a petitioner's constitutional claims on the merits, the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong. <u>See</u> <u>Slack</u>, 529 U.S. at 484. However, when the district court has rejected a claim on procedural grounds, the petitioner must show that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." <u>Id.</u> Upon consideration of the record as a whole, the Court will deny a certificate of appealability.

Therefore, it is now

**ORDERED AND ADJUDGED:**

1.     The Petition (Doc. 1) is **DENIED**, and this action is **DISMISSED WITH PREJUDICE**.

44

2.      The Clerk of the Court shall enter judgment denying the Petition and dismissing this case with prejudice.

3.      If Cuevas-Rodriguez appeals the denial of the Petition, the Court denies a certificate of appealability. Because the Court has determined that a certificate of appealability is not warranted, the Clerk shall terminate from the pending motions report any motion to proceed on appeal as a pauper that may be filed in this case. Such termination shall serve as a denial of the motion.

4.      The Clerk of the Court is directed to close this case and terminate any pending motions.

**DONE AND ORDERED** at Jacksonville, Florida, this 15th day of September, 2023.

**MARCIA MORALES HOWARD**
United States District Judge

sa 8/29
c:
Felix Luis Cuevas-Rodriguez
Counsel of Record